UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In Re | ) | Chapter 13 |
| | ) | |
| CHRISTOPHER G. SHANK, | ) | Case No. 03-15810-GBN |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CHRISTOPHER G. SHANK, | ) | Adversary No. 04-00090 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW |
| AMERICAN EDUCATION SERVICES/ | ) | AND ORDER |
| SLFC-LAW, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The complaint of Christopher G. Shank ("plaintiff" or "debtor"), seeking a declaration that his student loan should be discharged in bankruptcy was heard as a bench trial on August 11, 2005. An interim order was entered on August 26, 2005 announcing the court's decision. The following findings and conclusions are now entered.

**FINDINGS OF FACT**

1.  Plaintiff Shank incurred student loan debt to be trained as a lawyer and executed promissory notes under the Federal Family Education Loan Program. The note at issue is a consolidation of all plaintiff's educational loans, executed November 16, 1994 in the principal amount of $30,670.49. Interest accrues at 8% per annum. This consolidation loan was made by the Student Loan Finance Corporation, Inc., serviced by the Graduate Loan Center and guaranteed by American Education Services. As a result of plaintiff's bankruptcy filing, the

Graduate Loan Center submitted a claim to the guarantor. On October 10, 2003 American Education paid the lender $33,757.18 and is now the claim holder. Joint Pretrial Order of August 8, 2005 ("JPO") at pgs. 1-2. Adversary document ("dkt.") 22.

2. Plaintiff was admitted to the State Bar of Arizona in October of 1993. He was convicted of a felony, pursuant to a plea agreement on June 20, 2000. He served one year in jail and was placed on indefinite lifetime probation. Debtor's probation terms require payment of a probation service fee, counseling and testing fees that total $204 to $260 monthly. A criminal fine of $ 17,000 is paid at $100 monthly[1]. The fine's current balance is $13,050. These obligations are not dischargeable in bankruptcy. Plaintiff also must submit to annual or semi-annual polygraph examinations and psychological assessments that can cost from $208 to $400 per event.

A Disciplinary Commission rejected a settlement reached with the State Bar that would have resulted in a five-year suspension of debtor's law license. After litigation and a full appeal, debtor was permanently disbarred. He currently works as a law clerk or paralegal, earning $20 to $25 per hour on a billable hour basis. He must pay his own health insurance premiums and has no retirement account, long term savings or life insurance policy. JPO at pgs. 2-3.

3. Debtor's annual income is $42,860.00. He is unmarried and has no dependents. Poverty guideline levels for annual income of a household of one are $9,570. At the bankruptcy filing date, plaintiff owed approximately $34,000 for this loan. The note is payable over its remaining term of approximately 200 payments of, at least, $228 per month at 9% interest.[2] Debtor's first amended chapter 13 plan was confirmed on January 10, 2005. It pays

---

[1] Plaintiff's March 29, 2004 declaration states the criminal fine payment is $140 monthly. Exhibit ("Ex.") M at ¶ 4, p. 1.

[2] *See* JPO at p. 3. The court presumes the parties stipulated to a note rate of 8 % and a repayment rate of 9%, based on a graduated payment contract signed by debtor. Some submitted repayment calculations reflect interest accrues at 9%. *See, e.g.* Ex. F at standard repayment calculation. Others contain an 8 % rate. Ex. 2 at calculation.

arrearages on a home valued at $147,475[3] and a $4000 vehicle, over the maximum term allowed of 60 months. Plan payments begin at $250 monthly and increase to $550. Current plan payments are $400 monthly. A total of $26,850.00 will be paid by debtor into his plan over its term. *Id.* at pgs. 3-4, Ex. E.

      4.  Plaintiff filed bankruptcy on September 5, 2003, when his 1994 Nissan automobile was repossessed. Mortgage payments on his home were also two to three months delinquent. Most scheduled debt is either secured or nondischargeable unsecured debt. The repossession was the major precipitating event for the bankruptcy. Plaintiff was current in his student loan payments at the time, so this debt did not contribute to his immediate need to file bankruptcy. The financial crisis was caused by a tenant in plaintiff's residence, who defaulted on his rent. An income decrease caused by plaintiff joining a newly formed law firm was also a cause. An additional factor was plaintiff's admitted financial mismanagement, which he has now corrected. Prior to filing bankruptcy, he attempted a work out of financial problems in April of 2003 through Genesis Financial Management, Inc. He agreed to allow the debit from his checking account of $376 monthly to pay specified creditors, including the student loan creditor. The debt management plan failed because Genesis did not work with plaintiff's secured and IRS creditors, according to plaintiff.

      Since September of 2003, plaintiff has worked for a three-attorney law firm as a combination law clerk and paralegal. He was upgraded to an hourly employee from independent contractor status in January of 2004. His duties include preparing summary judgment motions, appellate briefs, post conviction relief pleadings and monitoring four medical malpractice cases. His salary is $25 per hour, which he considers a below market rate, caused by his notoriety. He last sent out employment resumes several years ago. His salary is insufficient to pay all bills, so he "moonlights" by doing extra legal work. He also occasionally works as a disc jockey, earning

---

**3**JPO at p. 4, ¶ M. The earlier Chapter 13 plan and confirmation order value the realty at $113,000. Ex. E at p. 3 of both plan and order. The court adopts the value reflected in the parties' stipulated JPO.

$150 per night. Although plaintiff has had difficulty previously with tenants, since April of 2005 the present renter reliably makes payments of $300 monthly. Plaintiff has been treated for the last five years for moderate clinical depression. Although the depression sometimes interferes with his work, he has prescription drugs that help deal with this illness. Plaintiff is otherwise healthy, 40 years old, holds a Bachelor of Science degree in Chemistry and a 1993 Juris Doctor degree. Prior to incarceration on July 28 of 2000, his employment included four years as a chemist, clerking for an appellate judge and work as a prosecutor. A judgment of the Arizona Supreme Court on March 18, 2004 disbarred him retroactive to August 14, 2000. August 11, 2005 trial testimony ("test.") of Christopher G. Shank, Exs. A, B, E, H, I, M, N.

5. Plaintiff purchased his home in April of 2002, following his release from incarceration, with his probation officer's approval. The five thousand dollar down payment came from savings and personal loans. The purchase price was $109,000. Currently he has paid his mortgage down to $99,000. Convicted felons of his status cannot live within a prescribed distance of schools, parks or day care centers. Landlords are reluctant to rent to them. He purchased a home when he learned of an impending statutory change that would restrict the number of such offenders who could reside in leased premises. He does not intend to move.

A monthly probation fee of $40 is charged plaintiff, as well as the costs of counseling and testing he is required to undergo, to ensure no recidivism or relapse. Mandatory attendance at group counseling occurs every two to four weeks. All probation, counseling and criminal fine payments must be current or plaintiff's probation could be revoked. Technically he can apply for bar reinstatement now. He has not done so, believing his status as a lifetime probationer would defeat his application. Ultimately, debtor intends to apply for readmission to the bar and again become a practicing attorney. He plans to do so after his probation is terminated. In his opinion, this will require complete payment of the $17,000 criminal fine, as well as compliance with all probation conditions. Plaintiff intends to improve his chances for reinstatement by making the gesture of entirely repaying the $4,019.87 bar discipline costs

accessed against him, although he believes this debt is dischargeable in his bankruptcy. Test., Ex. L.

 6. On January 30, 2004 plaintiff filed his complaint, seeking a declaration that the student loan debt would be discharged in his Chapter 13 bankruptcy. An amended chapter 13 plan was confirmed on January 10, 2005, that compensated defendant's claim as a general unsecured claim. Any unpaid balance of the student loan debt left after completion of plan payments will be treated pursuant to the outcome of this adversary. Plaintiff testified he kept current with student loan payments, except for a three-month arrearage, until he filed bankruptcy on September 5, 2003. Defaulted payments were brought current prepetition. Pursuant to the amended plan, post petition student loan payments were originally proposed to be deferred until the plan's conclusion. Any unpaid portion of the student loan not discharged, was to be amortized and paid over a ten-year period. Test., Ex. E at amended plan ¶ 5, p. 4, Stipulated confirmation order ¶ 14, p. 4.

 7. To the extent any of the following conclusions of law should be considered findings of fact; they are hereby incorporated by reference.

## CONCLUSIONS OF LAW

 1. To the extent any of the above findings of fact should be considered conclusions of law; they are hereby incorporated by reference.

 2. Pursuant to 28 U.S.C.§ 1334(a)(1994), jurisdiction of plaintiff's bankruptcy case is vested in the United States District Court for the District of Arizona. That court has referred all cases under Title 11 of the United States Code and all adversary proceedings arising under Title 11 or related to a bankruptcy case to this court. 28 U.S.C.§ 157(a)(1994); Amended District Court General Order 01-15. This proceeding having been appropriately referred, this court has core bankruptcy jurisdiction to enter a final judgment determining whether defendant's claim should be discharged in the related bankruptcy case. 28 U.S.C.§ 157(b)(2)(I).

 3. This court's conclusions of law are reviewed *de novo*. The trial court's factual findings are reviewed for clear error. *Hanf v. Summers (In re Summers)*, 332 F. 3d 1240, 1242

(9th Cir. 2003). The appellate court accepts the bankruptcy court's findings, unless upon review, it is left with the definite, firm conviction that a mistake has been committed. *Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.)*, 315 F.3d 1192, 1196 (9th Cir. )*, amended by* 326 F.3d 1028 (9th Cir. 2003). Where there are two permissible views of the evidence, the factfinder's choice between them is not clearly erroneous. *United Student Aid Funds, Inc. v. Pena (In re Pena),* 207 B.R. 919, 920 (9th Cir. Bankr. 1997), *aff'd* 155 F.3d 1108 (9th Cir. 1998) . Whether a claim is dischargeable presents mixed issues of law and fact that are reviewed *de novo. Hamada v. Far East National Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002).

4. Section 523(a)(8) of the Bankruptcy Code provides that a discharge does not discharge student loan debt, unless excepting the debt from discharge would impose an undue hardship on debtor. 11 U.S.C. §523(a)(8)(2002). Debtor bears the burden to prove by a preponderance of the evidence that he is entitled to discharge this debt. *Educational Credit Management Corp. v. Keith Mason (In re Mason)*, 315 B.R. 554, 559 ( 9th Cir. Bankr. 2004).

Debtor must satisfy the following three-part test to establish undue hardship:

> (1) ...(D)ebtor cannot maintain, based on current income and expenses, a "minimal" standard of living...if forced to repay the loans; (2) that additional circumstances exist indicating this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) ...debtor has made good faith efforts to repay the loans.

*Education Credit Management Corp. v. Elizabeth Marie Howe (In re Howe)*, 319 B.R. 886, 889 ( 9th Cir. Bankr. 2005), citing *Rufino v. United States (In re Rifino),* 245 F.3d 1083, 1087 (9th Cir. 2001), quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.* 831 F.2d 395, 396 (2d Cir. 1987)(*"Brunner"*).

5. The Bankruptcy Appellate Panel has rejected a rule that debtor must fall below poverty guidelines in order to discharge a student loan. However, a minimal standard of living under section 523(a)(8) does not equate to a middle class living standard:

> The *Brunner* standard meets the practical needs of the debtor by not requiring that he or she live in

> abject poverty...before a student loan may be discharged. On the other hand, the *Brunner* standard safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices.

*In re Howe,* 319 B.R. at 889-90.

6. Application of the first prong of the undue hardship test requires examination of debtor's current finances. The meaning of a "minimal standard of living" must be determined in light of the particular facts of each case. 319 B.R. at 890, citing *Cota v. U.S. Department of Education (In re Cota),* 298 B.R. 408, 415 (Bankr. D. Az. 2003).

The first prong provides that debtor prove he cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay the loan. This requires examination of debtor's current income and expenses to determine if payment will cause debtor's standard of living to fall below that minimally necessary. Debtor must demonstrate more than simply tight finances. Courts require more than temporary financial adversity, but stop short of utter hopelessness. The proper inquiry is whether it is unconscionable to require debtor to earn more income or reduce expenses. *Pennsylvania Higher Education Assistance Agency v. Birrane (In re Birrane),* 287 B.R. 490, 495 (9th Cir. Bankr. 2002), citing *In re Nascimento,* 241 B.R. 440, 445 (9th Cir. Bankr.1999). The fact that debtor's budget might be tight for the foreseeable future is the norm, rather than the exception. *Pena,* 207 B.R. at 921.

The court concludes debtor failed to prove the first prong of the *Brunner* standard by the requisite preponderance of the evidence. First, debtor's stipulated income of $42,860 exceeds stipulated poverty guidelines for a household of one, by a factor of more than four. While published financial guidelines cannot be the sole measure of a minimal standard of living, they can be one piece of evidence in the first prong analysis. *In re Howe* at 892-93, (Error to resolve first prong by simply applying IRS Collection Financial Standards). Second, with no dependents, debtor's income has been sufficient in amount and regularity to allow purchase of a home

following release from incarceration, a remarkable, commendable achievement. Next, his income, ability to manage long term moderate clinical depression and correction of prior financial mismanagement, allowed debtor to retain the residence, thereby accumulating $48,000 in stipulated equity in this real property. Debtor is otherwise healthy and has an ambitious plan to ultimately reclaim his law license. The court's individualized analysis concludes debtor currently maintains more than a minimal standard of living. Findings of Fact 2-6, *id.* It does not appear that requiring repayment over the note's remaining term will cause plaintiff to fall below a minimal standard.

7. The second and third prongs of the undue hardship test presuppose debtor met the first prong. *Howe,* 319 B.R. at 889. Plaintiff has not done so. Regardless, analysis of the additional prongs will be completed.

The second prong requires debtor to prove that additional circumstances exist, indicating the present inability to maintain a minimal living standard, while repaying the student loan is likely to persist for a significant portion of the repayment period. *Educational Credit Management Corp. v. Mason (In re Mason),* 315 B.R. 554, 559 (9th Cir. Bankr. 2004). There must be evidence debtor will be unable to repay for several years, because of psychiatric problems, lack of useable job skills, severely limited education, physical problems or other circumstances that persistently interfere with repayment ability. "Additional circumstances" are not defined solely by nature or a convenient label. The difference between simple hardship and dischargeable student loan debt is that the latter requires circumstances enabling the court to predict the longevity of the financial hardship on a case-by-case basis. There is no requirement the "additional circumstances" be "exceptional," such as serious illness, psychiatric problems, disability or circumstances more compelling than those of an ordinary person. "Additional circumstances" are any, beyond mere current inability to pay, demonstrating that the inability is likely to persist for a significant portion of the repayment period. Circumstances need be "exceptional" only in the sense they demonstrate insurmountable barriers to debtor's financial

recovery and repayment ability. The court considers any number of circumstances. The test is case-by-case. *Mason* at 561-62.

The "additional circumstances" proof requirement enforces clear congressional intent to make discharge of student loans more difficult than that of other debt. There must be evidence debtor's road to recovery is obstructed by a barrier that establishes debtor will lack the ability to repay for years. *Birrane* at 497. In the current case, had debtor established inability to repay existing over a period of years, the strongest "additional circumstances" would be his status as a convicted felon, subject to residency, counseling and probation requirements. Yet these circumstances were sufficiently overcome to allow acquisition of both stable, long term white collar employment and an appreciating real estate asset. His future prospects, based on his plan to regain his law license are, at least, promising. The court concludes debtor has not met the second prong of the *Brunner* test. Findings *id.*

8. The third prong requires that debtor prove he has made good faith efforts to repay. Two common factors are considered in evaluating good faith: debtor's efforts (1) to obtain employment, maximize income and minimize expenses and (2) to negotiate a repayment plan. *Mason,* 315 B.R. at 563. There is no evidence debtor failed to seek employment or unreasonably managed his finances. Making no payments or only some payments is not dispositive, by itself. *Birrane* at 499.

Debtor's pre petition payment history evidences good faith. He stayed current, with the exception of several payments, which were cured before bankruptcy. In attempting to avoid bankruptcy by using the Genesis Financial Management, Inc. workout, he scheduled the student loan debt for payment. Ex. N. Since he testified that the current student loan was not a precipitating factor driving him to bankruptcy, he cannot be faulted for apparently not seeking to negotiate prepetition with defendant. On the other hand, debtor did not maintain his payments post petition, a negative factor. *Birrane* at 500, citing *U.S. Dep't of Education v. Wallace (In re Wallace),* 259 B.R. 170, 185-86 (C.D. Cal. 2000).

Case 2:04-ap-00090-GBN    Doc 26    Filed 09/02/05    Entered 09/02/05 09:36:37    Desc
Main Document    Page 9 of 11

Evidence of plaintiff's attempts to post petition negotiate a payment plan with defendant is sparse– the court has little idea of the scope or timing of discussions. Plaintiff should have done better[4]. Clearly however, discussions occurred. Debtor's amended plan of May 27, 2004 provided for deferral of regular student loan payments. After completion of plan payments, the plan proposed that any nondischarged portion of the student loan be paid over ten years. First amended plan at p. 4, ¶ 5, administrative dkt. 23. Defendant objected *inter alia* that it should participate *pro rata* in plan dividends and that the nondischarged, unpaid portion of its debt remaining after completion of plan payments would include interest and collection costs. Creditor's objection of June 25, 2004, dkt. 25. No hearings were requested or conducted regarding this objection. The January 10, 2005 stipulated plan confirmation order clearly provided defendant would receive payment during the plan as a general, unsecured creditor. After completion of the plan, the unpaid balance would be treated according to the outcome of this adversary proceeding. Counsel for the student loan creditor approved the order. Order of January 10, 2005 at p. 4, ¶ 14 and p. 5. Dkt. 28. This general resolution of the manner of payments to creditor, both during the plan and afterwards, constitutes sufficient compliance with debtor's good faith negotiation burden, under the facts of this case.[5] Plaintiff has met the third prong of the test.

## ORDER

The court finds for defendant and against plaintiff. Plaintiff's complaint and cause of action are dismissed with prejudice. A final judgment will be issued.

---

**4**Plaintiff unilaterally contended in the JPO he made "...several settlement overtures/offers to (d)efendant during the course of this litigation...." *Id.* at p. 5, ¶ B.

**5**Evidence of discussions concerning the various repayment options available to student loan debtors is another way for debtor to meet the third prong. Defendant's exhibit 2 is an August 5, 2005 letter from defendant's counsel enclosing information regarding the options and indicating "I wanted to follow up with you and again encourage Timothy Shank to explore resolution...through one of the four repayment features...." Ex. 2 at letter. Neither party presented evidence concerning these apparent contacts or the extent, if any, of negotiations regarding repayment options.

Dated this 2nd day of September, 2005.

_____
George B. Nielsen, Jr.
United States Bankruptcy Judge

Copies e-mailed the 2nd
day of September , 2005, to:

Madeleine C. Wanslee
GUST ROSENFELD, P.L.C.
201 E. Washington, #800
Phoenix, AZ 85004-2327
Email: mwanslee@gustlaw.com
Attorney for Defendant

Tim Coker
COKER LAW OFFICE
637 N. 3rd Avenue
Phoenix, AZ 85003
Email: timcoker@cox.net
Attorneys for Plaintiff

By  /s/ Rachael M. Stapleton
       Deputy Clerk